UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILLIP SMITH,

Plaintiff,

v.

Case No. 4:04-cv-57
HON. DAVID W. MCKEAGUE

RANDY MIKKELSON,

Defendant.
______________________________/

**REPORT AND RECOMMENDATION**

Plaintiff Bentley Keys, also known as Phillip Smith, a prisoner incarcerated at the Muskegon Correctional Facility, filed this prisoner civil rights lawsuit against defendant Randy Mikkelson. Plaintiff alleges that his cell mates have all been chronic smokers and, as a result, he has been subjected to environmental tobacco smoke (ETS). Plaintiff asserts that defendant Mikkelson did nothing to ensure that plaintiff was free from ETS. Plaintiff argues that it is defendant Mikkelson's duty to make sure that plaintiff is provided with a cell mate who does not smoke. Plaintiff uses a Continuous Positive Airway Pressure (CPAP) machine while he sleeps, apparently to prevent snoring and/or sleep apnea. CPAP delivers air which is used to keep the airway open when inhaling. Plaintiff complains that his condition has been severely compromised due to unnecessary exposure to ETS and that his forced exposure to ETS amounts to a death sentence. As a result, plaintiff requests five million dollars in compensatory damages and five million dollars in punitive damages.

Defendant filed a motion to dismiss and for summary judgment. To resolve the issues presented, the undersigned believes that it is necessary to review the affidavits and materials filed

by the parties. Therefore, defendant's motion to dismiss should be treated as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. Id. at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." Id. at 324 (quoting Fed. R. Civ. P. 56(e)). While the evidence must be viewed in the light most favorable to the nonmoving party, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." Id. at 252. See also Leahy v. Trans Jones, Inc., 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); cf. Moore, Owen, Thomas & Co. v. Coffey, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff claims that defendant's conduct in forcing him to share a cell with a smoker violated his Eighth Amendment right to be free from cruel and unusual punishment. In order to set forth an Eighth Amendment claim based on exposure to ETS, plaintiff must demonstrate that he was exposed to unreasonably high levels of ETS, that there is more than a statistical probability that he will be injured by ETS, and that involuntary exposure to ETS violates contemporary standards of

decency. See Helling v. McKinney, 509 U.S. 25, 35-36, 113 S. Ct. 2475, 2482 (1993). In addition, plaintiff must also demonstrate that his exposure to ETS was the result of deliberate indifference on the part of defendant. Helling, 509 U.S. at 36-37, 113 S. Ct. at 2482. Specifically, plaintiff must show that defendant "actually knew that [plaintiff's] exposure to ETS created a substantial risk of harm and that [defendants] deliberately disregarded that risk by failing to take reasonable measures to abate it." Montague v. Campbell, No. 97-5760, 1998 WL 246345, **1 (6th Cir. 1998).

Plaintiff has presented affidavits from other prisoners. Prisoner Toles attested that he has observed inmates smoke in the bathrooms and in their rooms, and that ETS has come inside his cell from prisoners smoking in the bathrooms. Prisoner Toles observed plaintiff when he was taken to the emergency room one night because plaintiff had difficulty breathing. Exhibit A, docket # 30. Prisoner Spangler stated that he has seen prisoners smoking in their rooms and has observed plaintiff have shortness of breathe. Exhibit B, docket # 30. Prisoner Taylor stated that when he uses his own CPAP machine, he can smell smoke come through the machine. Prisoner Taylor witnessed prisoner Watts smoking in plaintiff's cell and prisoner Taylor has witnessed numerous prisoners smoking in the prison. Exhibit C, docket # 30. Plaintiff has also presented a warning instruction from his CPAP machine which states that if supplemental oxygen is used with the system, it should not be used in the presence of smoking or an open flame. Exhibit D, docket #30. The instruction states "that all sources of ignition should be kept away from the product and preferably out of the room in which it is being used." Id.

____________Defendant Mikkelson has presented an affidavit which states that plaintiff is housed in a nonsmoking facility. Inmates, however, still smoke in the facility in violation of the rules. Numerous misconducts have been given to prisoners for smoking in the buildings. Plaintiff initially came to defendant complaining that he did not get along with his roommate. According to

defendant, plaintiff never stated that he wanted to be housed with someone who was not a chronic smoker. The standard procedure is for the inmate to find a new roommate on his own. The two inmates fill out a form indicating their desire to move in together. Plaintiff never filled out the form. However, because plaintiff indicated that he was fearing a physical confrontation with his roommate, defendant found plaintiff a new room. Several days later, plaintiff complained that his new roommate was smoking too much and that he needed to be moved immediately. Defendant instructed plaintiff to follow procedure by finding a new roommate and to fill out a new form. Defendant stated that plaintiff refused and told defendant that it was defendant's responsibility to find a nonsmoking roommate for plaintiff. Defendant explained that he did not have knowledge of the smoking habits of the 160 inmates that he oversaw, and the best he could do was to enforce the nonsmoking policy and encourage his staff to enforce the policy.

Plaintiff has presented no evidence that defendant Mikkelson acted with deliberate indifference to any need that plaintiff may have had to be free from ETS. First, plaintiff has failed to present any medical evidence that it was necessary for plaintiff to be free from ETS. Although plaintiff has asserted that his CPAP use is a sufficient reason to support his need to be free from ETS, plaintiff has not shown that the CPAP is less effective if ETS is present. Moreover, despite the warning that plaintiff presented about smoking and CPAP use when supplemental oxygen is used, plaintiff has not alleged that he uses supplemental oxygen. More importantly, plaintiff has failed to show that defendant Mikkelson possessed any knowledge that plaintiff had a medical condition which required absolutely no exposure to ETS.

Further, defendant Mikkelson did not ignore plaintiff's requests for a cell move. Defendant Mikkelson initially moved plaintiff when plaintiff claimed that he feared a physical confrontation with his roommate. Defendant Mikkelson instructed plaintiff to follow procedure and

find a new roommate after plaintiff complained that his new roommate smoked too much. It was plaintiff who failed to attempt to find a new a roommate. Plaintiff has not shown that he has health problems as a result of exposure to ETS or that he was exposed to unreasonably high levels of ETS which may cause future health risks. Similarly, plaintiff has failed to show that defendant Mikkelson acted with deliberate indifference by exposing plaintiff to ETS.

Moreover, defendant is entitled to the defense of qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Dietrich v. Burrows, 167 F.3d 1007, 1012 (6th Cir. 1999); Turner v. Scott, 119 F.3d 425, 429 (6th Cir. 1997); Noble v. Schmitt, 87 F.3d 157, 160 (6th Cir. 1996); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. Anderson v. Creighton, 483 U.S. 635, 641 (1987).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. Dietrich, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. Dietrich, 167 F.3d at 1012; Wegener v. City of Covington, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. Kain v. Nesbitt, 156 F.3d 669, 672 (6th Cir. 1998). Where there

is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." Id.

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of the pre-existing law the unlawfulness must be apparent.

Anderson, 483 U.S. at 639-40. See also Durham v. Nu'Man, 97 F.3d 862, 866 (6th Cir. 1996), cert. denied, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

Durham, 97 F.3d at 866 (citing Robinson v. Bibb, 840 F.2d 349, 351 (6th Cir. 1988)).

In the opinion of the undersigned, no genuine issue of fact exists in this case. Defendant did not act with deliberate indifference regarding a serious medical need for plaintiff to be free from ETS. Defendant's conduct, in my opinion, did not violate clearly established law. Therefore, it is recommended that the Court find that defendant is entitled to the qualified immunity defense.

Accordingly, it is recommended that defendant's motion for summary judgment (Docket #18) be granted, dismissing this case in its entirety.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). See McGore v. Wrigglesworth, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal. It is recommended that should the plaintiff appeal this decision, the court assess the $255 appellate filing fee pursuant to § 1915(b)(1), see McGore, 114 F.3d at 610-11, unless plaintiff is barred from proceeding in forma pauperis, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he should be required to pay the $255 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten days of your receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR. 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal of those issues or claims addressed or resolved as a result of the Report and Recommendation. United States v. Walters, 638 F.2d 947 (6th Cir. 1981). See also Thomas v. Arn, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: November 3, 2004